# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
On Brief January 11, 2011

## FALLON LYNN TALLENT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Wilson County**
**No. 03-0679   John D. Wootten, Jr., Judge**

_____

**No.  M2010-00898-CCA-R3-PC - Filed February 24, 2011**

_____

Petitioner, Fallon Lynn Tallent, was convicted in Wilson County of two counts of premeditated murder and sentenced to two, consecutive life terms.  The convictions were affirmed on direct appeal, and the supreme court denied permission to appeal. *State v. Fallon L. Tallent*, No. M2005-00183-CCA-R3-CD, 2006 WL 47090 (Tenn. Crim. App., at Nashville, Jan. 10, 2006), *perm. app. denied*, (Tenn. May 1, 2006).  Petitioner filed a pro se petition for post-conviction relief.  It was denied without a hearing.  Petitioner appealed to this Court.  On appeal, this Court reversed the judgment of the post-conviction court and remanded the case for appointment of counsel. *Fallon Lynn Tallent v. State*, No. M2007-01336-CCA-R3-PC, 2008 WL 762486, at *5 (Tenn. Crim. App., at Nashville, Mar. 24, 2008).  On remand, counsel was appointed, and an amended petition for post-conviction relief was filed.  After a hearing on the petition, the post-conviction court denied relief and dismissed the petition.  Petitioner has appealed the denial of post-conviction relief.  After a thorough review of the record, we determine that Petitioner has failed to show that she received ineffective assistance of counsel.  Accordingly, the judgment of the post-conviction court is affirmed.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Rebecca Brady, Cookeville, Tennessee, for the appellant, Fallon Lynn Tallent.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Robert Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Petitioner was convicted of two counts of premeditated first degree murder by a Wilson County Jury. The underlying facts of the case were summarized by this Court on direct appeal. *See Fallon L. Tallent*, 2006 WL 47090 at *1-2. Essentially, Petitioner led police on a high-speed chase from Knoxville to Mount Juliet, where she struck and killed two police officers, Sergeant Jerry Mundy and Deputy John Musice. *Id.* at *1. At the time of the crash, Petitioner was driving at an estimated 80 to 120 miles per hour. *Id.* Both officers were killed immediately upon being struck by the car driven by Petitioner; their bodies were thrown from the points of impact 280 and 270 feet respectively. *Id.*

On direct appeal, Petitioner argued that the trial court erred when it: (1) allowed a witness not listed in discovery to testify; and (2) ordered the two life sentences to be served consecutively. *Id.* This Court affirmed the convictions and sentence, and the Tennessee Supreme Court denied permission to appeal. *Id.*

Subsequently, Petitioner filed a pro se petition for post-conviction relief in which she argued, among other things, that she received the ineffective assistance of trial counsel and that her constitutional right to due process was violated because she was denied a preliminary hearing. The petition was denied without the appointment of counsel or a hearing. Petitioner appealed. *Fallon Lynn Tallent*, 2008 WL 762486, at *1. On appeal, this Court determined that when viewed in the light most favorable to Petitioner, the claims presented in the original pro se petition, along with the request for counsel, entitled Petitioner to the appointment of counsel. Consequently, this Court reversed the dismissal of Petitioner's post-conviction petition and remanded the case for appointment of counsel to assist Petitioner in drafting an amended petition for post-conviction relief. *Id.* at *5.

On remand, counsel was appointed, and an amended petition was filed. Petitioner raised the following grounds for relief in her pro se petitions: (1) trial counsel was ineffective by failing to ask for a change of venue; (2) trial counsel was ineffective for failing to ask for concurrent sentences; and (3) the prosecution failed to disclose Kathleen Griffith as a witness during discovery. After counsel was appointed, the amended petition raised the following grounds for relief: (1) trial counsel was ineffective for failing to request an unbiased mental evaluation; (2) trial counsel was ineffective for failing to adequately prepare Petitioner to testify; (3) trial counsel was ineffective for failing to communicate honestly with Petitioner;

and (4) Petitioner's due process rights were violated when the trial court denied a preliminary hearing.

The post-conviction court held a hearing on the petition for relief. At the hearing, both trial counsel testified. Lead trial counsel testified that he and his law partner were retained by Petitioner's family to represent her at trial. He recalled meeting with Petitioner in Nashville where she was incarcerated prior to trial. A few weeks prior to trial, Petitioner was transferred to a jail in Blount County, so trial counsel "talked with her every day." Lead trial counsel recalled that his partner met with Petitioner more than he did prior to trial.

Lead trial counsel testified that they hired a private investigator, Kenny Myers, to help with the case and trial preparation. The theory of the defense was that Petitioner did not intend to run over the police officers with her car but that she was trying to avoid a spike strip that officers had thrown in the road. Lead trial counsel testified that the goal was "to try to convince the jury that the State could not prove that it was an intentional or knowing killing, but a tragic accident caused by reckless conduct."

Lead trial counsel informed the post-conviction court that he thought there was a possibility that Petitioner would get convicted of something less than first degree murder. He also recognized that the fact the victims were police officers was detrimental to Petitioner's case. Lead trial counsel recalled discussing these possibilities with Petitioner prior to trial and felt that Petitioner understood the emotional impact of the case.

Lead trial counsel specifically remembered talking to Petitioner about the possibility that she would be convicted if she went to trial. At one point, Petitioner wanted to accept a plea deal offered by the State for fifty years at 100 percent. Petitioner basically "pitched a fit," according to lead trial counsel. In response, trial counsel wrote Petitioner a letter in which they discussed her right to "take the deal" but informed her that it was not in her best interest. Petitioner then decided that she wanted to make a counter-offer to the State for forty years. The negotiations continued up to the seating of the jury for trial. Lead trial counsel actually "thought [Petitioner] was going to take [the deal]." At the last minute, Petitioner decided to go ahead to trial.

Lead trial counsel acknowledged Petitioner's concern about testifying but recalled that she made the decision to testify "well before the trial." He testified that co-counsel was responsible for preparing Petitioner for trial. Both lead trial counsel and co-counsel discussed the advantages and disadvantages of testifying with Petitioner. Lead trial counsel even wrote Petitioner a letter in which he informed her that her demeanor in court was important to her defense. They felt it was important for her to contradict certain statements

that had been attributed to her by other witnesses. Additionally, defense counsel testified that they thought it was important for Petitioner to inform the jury that it was an accident.

Lead trial counsel expressed frustration that the trial court had denied a preliminary hearing. He admitted that it "was a good issue that should have been raised on appeal." However, lead trial counsel opined that the defense was not really affected by the lack of a preliminary hearing, commenting that the defense "ended up with . . . probably the same evidence that - we . . . obtained through discovery." He could not say how a preliminary hearing "would have affected the outcome."

Lead trial counsel read two letters into evidence at the hearing that were sent by the defense team to Petitioner prior to trial.

Co-counsel also testified at the hearing. He was unable to estimate the amount of time spent on the case because he was "paid a lump sum retainer" and did not keep hours with regard to Petitioner's case. Co-counsel met multiple times with Petitioner and grew to develop the opinion that Petitioner had a difficult childhood.

Co-counsel recalled that the defense "fought hard" to get a preliminary hearing for Petitioner. He testified that the preliminary hearing would have been beneficial for preparation of examination of witnesses. However, in retrospect, the testimony of the witnesses at trial did not differ materially from the testimony given by the State in the written reports prior to trial. Co-counsel did not think that the defense was impaired because there was no preliminary hearing.

Co-counsel admitted that Petitioner could have felt "unprepared" as alleged in the petition with regard to her trial testimony if Petitioner were referring the "exact date and time in which she was to take the witness stand" because there were something like forty-three witnesses that testified. However, co-counsel insisted that Petitioner knew she was going to testify and that she would be the first defense witness. The defense team wanted to put Petitioner on the stand quickly so the State would not have a chance to prepare. Co-counsel remembered meeting with Petitioner multiple times to discuss "all aspects of the case."

Co-counsel recalled that lead trial counsel was primarily responsible for the plea negotiations. Co-counsel described his role as attacking the State's case and preparing Petitioner for trial.

Co-counsel agreed with lead trial counsel's assessment of the defense theory in that it was possible that the jury would not find premeditation.

Co-counsel was cross-examined about Petitioner's mental health. He recalled that she was evaluated and noted that the doctor could not come to the conclusion that Petitioner "had a deficiency in being able to tell right from wrong" and could not conclude that Petitioner was "incapable of premeditation."

Co-counsel was responsible for performing the direct examination of Petitioner at trial. He recalled that it was fairly short. Co-counsel testified that Petitioner had not seen the crime scene photos prior to trial because the defense wanted Petitioner to express some emotion when she saw the photographs and did not want Petitioner to appear "scripted." Further, co-counsel talked with Petitioner prior to trial about remorse for the event.

Petitioner testified at the hearing that she felt unprepared to testify. In fact, she claimed that she was surprised when co-counsel called her to the stand. Petitioner acknowledged that she discussed testifying with trial counsel and that they spent "quite a bit of time" with her prior to trial but claimed that it did not involve testifying. Petitioner stated that her testimony would have been different had she been more prepared for trial. She was unable to give specific examples of how her testimony would have been different when asked.

Petitioner claimed that she wanted to "take the deal" and avoid trial because she "wanted it to be over." Petitioner only went to trial because of the way the attorneys spoke to her. She acknowledged that she tried to fire them prior to trial and claimed that they told her they "would not represent [her any more]" if she took the deal.

Petitioner insisted that she was affected by the lack of a preliminary hearing. Petitioner claimed that she would have been better prepared for trial. On cross-examination, Petitioner acknowledged that she received the letters from trial counsel about the plea offer and taking the case to trial. Petitioner also remembered discussing these plea offers with lead trial counsel.

At the conclusion of the hearing, the post-conviction court determined that it was "clear" from the record that Petitioner had an "unbiased mental health evaluation" prior to trial. In other words, trial counsel were not ineffective in their representation "in regards to obtaining an unbiased mental evaluation." The post-conviction court determined that trial counsel "did all they could under the facts and circumstances of this case" in trying to secure a preliminary hearing for Petitioner. Next, the post-conviction court determined that lead trial counsel and co-counsel communicated effectively with Petitioner as evidenced by the two letters that were entered as exhibits at the hearing. The letters informed Petitioner of the available plea offer as well as the advantages and disadvantages associated with going to

trial. The post-conviction court noted that both the decision to go to trial and the decision to testify were "ultimately [Petitioner's] decision[s]." The post-conviction court concluded:

> [T]he allegations contained in this petition have not been proven by a clear and convincing evidence, which is the burden of proof the petitioner has in this case, and so, therefore, with regard to all allegations contained in the petition, the amended petition, this Court denies al relief sought by the petitioner in this case.

In other words, the post-conviction court denied the petition. Petitioner subsequently filed a notice of appeal, challenging the denial of her petition for relief.

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or

resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

### *Failing to Properly Communicate with Petitioner*

Petitioner complains on appeal that trial counsel were ineffective for failing to communicate openly and honestly regarding her chances of conviction. Specifically, she contends that trial counsel did not "openly and honestly" communicate with her about the plea offers made by the State and the chances of conviction.

The record supports the post-conviction court's findings. The testimony at the post-conviction hearing showed that both lead trial counsel and co-counsel met with Petitioner on multiple occasions and communicated with her through both letter and telephone. The letters written to Petitioner included discussions of various plea offers as well as the advantages and disadvantages of going to trial. The post-conviction court noted that the ultimate decision about the plea rested with Petitioner even if the defense team counseled her to go to trial. Further, "[t]he petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonable based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins*, 911 S.W.2d at 347 (citing *State v. Martin*, 627 S.W.2d 139, 142 (Tenn. Crim. App. 1982)). Petitioner has failed to demonstrate clear and convincing evidence that she is entitled to relief. This issue is without merit.

*Failure to Prepare Petitioner to Testify*

Petitioner also complains that trial counsel were ineffective for failing to adequately prepare her to testify at trial. Petitioner insists that she informed her attorneys that she did not want to testify and did not know until the moment she was called on the stand that she was going to testify at trial. Petitioner claims that her testimony would have been different had she been prepared. The State disagrees.

The testimony at the post-conviction hearing indicated that both lead trial counsel and co-counsel discussed the possibility of Petitioner testifying at trial with Petitioner prior to trial. Co-counsel testified that it was a strategic decision to place Petitioner as the first witness to try to catch the State off-guard. The post-conviction court did not believe Petitioner's claims that she took the stand unwillingly. Petitioner has failed to demonstrate by clear and convincing evidence that she is entitled to relief. This issue is without merit.

*Failure to Secure a Preliminary Hearing*

Finally, Petitioner claims that trial counsels were ineffective for failing to make sure she had a preliminary hearing. Petitioner notes that trial counsel agreed that this issue should have been raised on appeal. The State contends that Petitioner failed to establish this claim with clear and convincing evidence. We agree.

Both trial counsel testified that they sought to have a preliminary hearing but that the motion was denied by the trial court after a hearing. While trial counsel stated that this issue probably should have been raised on appeal, neither attorney could articulate how the denial of a preliminary hearing would have been determined to be error. Further, neither lead trial counsel nor co-counsel felt that the defense was harmed by the lack of a preliminary hearing. In fact, the testimony indicated that the defense team was provided adequate information from the State through discovery. Petitioner did not show how she was prejudiced by the lack of a preliminary hearing. Petitioner has failed to demonstrate clear and convincing evidence that she is entitled to relief. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

-8-